DANIEL CHAMBERS *vs.* PRUDENCE G. CHALMERS, *et al.*
*December*, 1832.

According to the established practice of Chancery in this State, it may be taken to be a general rule, that a defendant, although he answers the bill, and issue be joined thereon, may at the hearing object, that the case made in the bill does not entitle the party to equitable relief, and if his objection be sustained, the bill will be dismissed.

This rule however, as it regards some defences, at least, given by statute, cannot apply. Limitations must always be pleaded, both at law and in equity ; and a defendant cannot avail himself of limitations, merely because the proceedings of the plaintiff show a case to which limitations might be applied.

The same doctrine, though not perhaps to the same extent, prevails, where reliance is placed by a defendant upon the usurious character of the contract set out in the bill, as the foundation of the plaintiff's proceeding.

Where a bill for the specific execution of a contract states a case, which may or may not be usurious, according to the facts which really exist in the case, the statute of usury must be pleaded or relied upon in the answer, or it will not avail the defendant. The rule might be different, if the bill stated a usurious contract which no inference or intendment can help.

Where a contract contained divisible, unconnected, and independent stipulalations, the performance of which was agreed to be guarantied by the execution of a mortgage, and afterwards upon a liquidation of the accounts of the parties, the mortgage was executed, it was held to be no objection in equity to enforcing the mortgage, merely because some of the stipulations in the first contract were usurious. To sustain the objection that the mortgage was usurious, it should have been stated, that it was given to secure the usurious stipulations mentioned in the contract.

After issue joined upon an answer alleging usury, generally, it cannot be objected at the hearing, that this defence had not been taken with more legal precision. This could not be done even at law.

Pleadings in Chancery should consist of averments or allegations of fact, and not of inference and argument.

Where a plaintiff claimed to have a mortgage recorded after the time allowed by law, and the defendant set up a claim to an allowance out of the property which it was alleged was a part of the consideration for uniting in the mortgage, evidence that the plaintiff had said, (after the time for recording the mortgage had elapsed,) he never blamed the defendant in the transaction, and that he was willing to allow her $3000, out of the property in dispute, and that he had employed R to call upon the defendant and explain to her the propriety of accepting that sum, is not sufficient to support the defence.

An agreement that a co-defendant might be examined before a Justice of the Peace, to have the same effect as if taken regularly under a commission

for evidence, or a commission *de bene esse*, and as if the chancellor's order for his examination as a witness had been obtained, does not waive an objection to the witness's competency, and the exception may be taken at the hearing.

Defendants who are properly joined in equity, who have an interest in the same subject matter, and must be affected by the same evidence, are not competent witnesses for each other.

Where a married woman and her trustee united in a mortgage of her separate estate, upon a bill to enforce the mortgage, in which they were both made defendants, the trustee being responsible for costs, is not a competent witness for his co-defendant.

APPEAL from the Court of Chancery.

The present bill was filed by the appellant, against the appellee, and one *Thomas Lee*, (since deceased,) on the 24th of October, 1825. It alleged that the complainant, being seized and possessed of a rope walk, with the necessary hands and stock, &c. on or about the 1st of November, 1826, was applied to by *James Chalmers*, now deceased, to rent the rope walk and hands to him, and to sell him the stock of materials then on hand, he promising to secure complainant, by a mortgage of all his, the said *Chalmers*, property, real, personal, and mixed. That wishing to retire from business, the complainant accepted the proposal, and in pursuance thereof, a written contract was entered into, between them, containing the terms of said agreement, which contract is exhibited, and made part of the bill. That *Chalmers* at that time was seized, and possessed of a certain real and personal estate, contained in a deed of mortgage beneath exhibited, and made a part of these proceedings. That after the date of the aforesaid agreement, and in violation thereof, complainant was informed, that *Chalmers* had executed a conveyance of the property, in the said deed contained, to *Thomas Lee*, in trust for the benefit of the grantor's wife, *Prudence G. Chalmers*, (one of the appellees.) That upon this information he applied to *Chalmers* to liquidate the amount due him, and to prevail on *Thomas Lee*, the trustee, to join in a mortgage to complainant of the property, conveyed as aforesaid to *Lee*, for the benefit of

*Chalmers'* wife, to secure the amount which might be found to be due the complainant.  That upon a liquidation of their accounts, there was found to be due from *Chalmers*, to complainant, the sum of $4200, and accordingly, he, *Chalmers*, directed his counsel to propose a mortgage of the property, in the deed to *Lee*, to secure the same, payable in one year, with interest from the 15th August, 1810, in which, said *Lee* agreed to join.  That said deed of mortgage was subsequently executed, and delivered to him, on the 31st of December, 1811, by the counsel for *Chalmers*, and complainant, supposing it had been but just then executed, and it not at that time being convenient, to carry it to the office to be recorded, put it away for a few weeks, at the expiration of which time, upon reading it, he found to his surprize, that the time for recording it had elapsed.  That the omission to record said deed, was from no fradulent design, but from the cause above mentioned.  That the parties by whom it was executed having refused to give him another mortgage, he filed his petition in the Court of Chancery, to have the first deed recorded, which the chancellor decreed should be done, but that decree was reversed, upon an appeal to the court of appeals, without prejudice, in consequence of the relief which the chancellor granted, being beyond the prayer of the petition.  That the conveyance by *Chalmers* to *Lee*, in trust, for the grantor's wife, was without consideration, and in fraud, and violation of his agreement with complainant.  The bill then prays, that the mortgage deed may be decreed to be recorded, and that the property therein contained may be sold, for the payment of complainant's claim, &c. and for general relief.

The agreement referred to in the bill, dated 1st November, 1806, recited, " whereas the said *Daniel Chambers*, and *James Chalmers*, for the mutual satisfaction, and reciprocal benefit of each other, do enter into the following articles, as binding on each according to their true intent and meaning."

1. The said *Daniel Chambers* doth hereby agree, to put into the hands of said *James Chalmers*, stock in rope yarn, as agreed on by them, to amount of $3000, for the entire use of said *Chalmers*, as stock in trade, during the term of two years, from the date thereof, redeemable, optionally, at any time by said *Chalmers*, within the said two years.

2. For and in consideration of the above capital stock of $3000, the said *Chalmers* doth bind himself, his heirs, &c. to pay the said *Chambers*, quarterly, for the use of said stock, according to the dividends made on bank stock in the *Union Bank of Maryland*, provided the same sinks not lower than simple interest, then, and in such case, say simple interest.

3. The said *Chambers* doth hereby agree, to rent to him the said *Chalmers*, his rope walk, and untensils for manufacturing rope, for the term of four years, from the date hereof, together with horses, &c. for the annual rent of $300, payable quarterly, at the expiration of which term, the said rope walk, &c. to be returned by the said *Chalmers* to the said *Chambers*.

4. This article relates to the hire of hands to be employed at the rope walk.

5. The said *Chalmers* obliges himself not to sell, or transfer the aforesaid capital stock, or mix it in co-partnership stock, or purchase property with it, without first consulting the said *Chambers*, or his agent appointed for that purpose; and further, as a guaranty for the return of the said stock of $3000, the said *Chalmers* will make a sufficient deed of mortgage, to *Chambers*, of his property, real, personal, and mixed, until these articles are complied with, acccording to their true intent and meaning, of securing *Chambers*, that no loss may arise, in either, principal or interest, rents or wages, &c.

The mortgage referred to, dated 1st July, 1811, recites, that *Chalmers* did heretofore, on the 3d of January, 1809, for the consideration therein mentioned, convey to *Thomas Lee*, his heirs and assigns, parts of two tracts of land, called,

&c.; to have and to hold the same in trust, for the separate use of *Prudence G. Chalmers*, and her heirs, and to dispose of as she, or her heirs, should appoint and direct. And whereas, the said *James Chalmers*, before the date of said deed, had contracted a debt hereinafter mentioned, with the said *Daniel Chambers*, the payment whereof he had agreed to secure by mortgage, on the same parcels of land, as by a writing to that effect, signed and sealed by the said *Chalmers*, will appear. And it being of importance to said *Chalmers*, to have a further indulgence for said debt, and the said *Prudence G. Chalmers*, being willing that her husband's contracts should be carried into effect, hath appointed, and directed the said *Thomas Lee*, to dispose of, and convey the said lands, and premises, to the said *Daniel Chambers*, in mortgage, to secure the said sum of money agreeably to the terms of said agreement. In consideration of the above recited premises, and of one dollar, the said *Thomas Lee* bargained and sold, to the said *Chambers*, his heirs and assigns, the lands and premises, in the aforesaid deed of trust; with a proviso, that if the said *James*, and *Prudence G. Chalmers*, shall, on or before the first day of July next, pay the said *Daniel Chambers,* the sum of $2200; and on the first of July, 1813, the further sum of $2000, then this deed to be void, and *Thomas Lee* shall be seized of the said land, &c. subject to the trusts in the first recited deed.

*Prudence G. Chalmers*, in her answer stated, that her husband, *James Chalmers*, did rent a rope walk, &c. of the complainant, on certain terms, which she supposes are truly set forth in the agreement referred to in the bill, but she has no knowledge of any agreement in relation to a mortgage, to secure the return of said property. That said property, after being in the possession of said *Chalmers* about three years, was given up, and returned to *Chambers*, and she believes, that the agreement reserves to *Chambers*, under name of rent, an interest on the value of the rented premises, at, and after the rate of dividends, on stock in the

*Union Bank,* if those dividends should not be less than six per cent., in which respect she charges that the agreement was usurious and void. That some time after the execution of this agreement, and after her aforesaid husband had taken possession of the rope walk, &c. *Chambers* claimed of him a balance of $4200, and insisted on having the same secured by mortgage, and upon its being refused him, he filed a bill as he has stated, on the agreement, for its specific performance. That prior to this, this defendant, by the devise of her father, had acquired an undivided interest in a valuable real estate, together with her brothers and sisters, and it was agreed between her, and her husband, and brothers, that she would concur in a sale of her interest therein, to be made by her husband, provided he would invest the proceeds in other real estate, which should be conveyed in trust, for her separate use. That her husband accordingly sold her estate, and applied the proceeds to discharge a mortgage, which he had given on a piece of property, previously purchased by him of one *James Hindman,* and then in compliance with the aforesaid understanding, conveyed a portion thereof to *Thomas Lee,* for her separate use. That at this time she did not know of any agreement, which her husband had entered into with the complainant, binding himself to give a mortgage of his estate, real and personal, if any such agreement was ever in fact made at all. That after the conveyance in trust for her benefit, *Chambers* represented to this defendant, that the same was invalid as respected his claim for a mortgage, and in order to induce her to direct that one should be executed to him, and as a consideration therefor, agreed to secure to this defendant's separate use, the sum of $5000, which was the sole inducement for her so doing. That the representations made as aforesaid, by the complainant to her, in regard to the superiority of his claim for a mortgage, over the trust deed for her benefit, were untrue, and fraudulently made, for the purpose of unfairly depriving her, of her just interest in the trust property, and that the

mortgage, in the execution of which she was thus induced to·unite, was fraudulently obtained.    That complainant has not in any way secured this defendant the $5000, as agreed, nor has he settled with her husband, for the purpose of ascertaining the precise amount which may be due him, as was stipulated at the time of the execution of the mortgage, it being then distinctly understood, that the sum mentioned in the mortgage was only nominal, and that an endorsement should be made upon it, that the amount actually due should be ascertained by a subsequent settlement. The complainant having complied with none of these engagements, this defendant, charges that said mortgage is wholly and entirely fraudulent, and void.    And by way of *plea* to the said bill, she avers, and maintains that the said pretended conveyance of mortgage, is utterly void, and invalid, not only by reason of the circumstances set forth in this answer, but also in this, that by and according to the terms and conditions of the deed of trust to *Lee*, it was not competent to her, and she had not the right and authority, to make a valid conveyance by way of mortgage, of and according to the purport, terms, and provisions of said pretended deed of mortgage, and that she and the land and premises therein mentioned, are in no manner bound by the same.

The answers of the children of *Chalmers*, who were made defendants, after his death, state that they are ignorant of all the matters stated in the bill.

The general replication was filed by the complainant.

*Mrs. Eleanor Lee*, for the defendant deposed, that *Daniel Chambers* said he never blamed *Mrs. Prudence G. Chalmers*, in the transaction, and that he was willing to allow her $3000, (which he understood to be her patrimony,) out of the same property on which *Mrs. Chalmers* resided, and upon which, the deponent understood, *Chambers* had a claim, by some instrument of writing; and that he, *Chambers*, employed *Mr. Philip Rogers* to call upon *Mrs. Chal-*

*mers,* and explain to her the propriety of accepting the $3000.

In answer to a cross interrogatory, she stated, that in the conversation alluded to above, she heard something about a paper, which had been neglected to be recorded, and which related to the property, but whether the remark fell from *Chambers,* or the person with whom he was conversing, she does not know.

*Thomas Lee's* evidence was taken, under an agreement, that he might be examined before a justice of the peace, to have the same effect, as if taken regularly under a commission, for evidence, or a commission *de bene esse;* and as if the chancellor's order for his examination as a witness, had been obtained.

He stated that *Chambers,* to induce *P. G. Chalmers* to join in the mortgage, and as the consideration therefor, promised to secure her out of said property, or otherwise, the sum of $3000, that being the amount mentioned by him to *Chambers,* and the amount of her money, paid for the mortgaged property. He further proved, that the amount mentioned in the mortgage was but nominal, the object being to secure such sum as might subsequently be ascertained to be due.

There was a commission also to take testimony, and some other proof was adduced, which will be found sufficiently adverted to in the opinions of the chancellor, and of this court.

BLAND, chancellor, (March term, 1828.)

The object of this bill is to have the mortgage deed recorded, and the property sold for the payment of the debt secured by it. It appears that the plaintiff having had certain dealings with the late *James Chalmers,* arising out of a contract bearing date the 1st day of November, 1806, they came to a final settlement some time prior to January, 1809, when it was found that the late *James* was indebted to the plaintiff in the sum of $4,200, and to secure the payment of that sum, with interest from the 15th August, 1810, the

mortgage deed dated 1st July, 1811, was made, which, without any fraudulent intention on the part of the plaintiff, was, from accident or negligence, not recorded within the time prescribed by law.

The defendant, *Prudence*, takes various grounds of defence by her answer, one of which is, that the plaintiff's claim is usurious, and, consequently, that this mortgage security is utterly void, which, if true, would be as fatal to a regularly recorded and legal mortgage, as to an equitable one, in the situation of that now under consideration.    It is not alleged, nor is there any thing that shows, that the not recording of this deed of 1st July, 1811, was imputable to any fraudulent intention of the plaintiff.    The positions assumed by the defendant, *Prudence*, may, therefore, be examined, unembarrassed by any considerations arising from the present situation of this deed.    The contract of 1st November, 1806, contains eight articles, but three of which, the first, second, and fifth, are, however, necessary to be considered in relation to this question of usury.    They run thus: (the chancellor here recited the first, second, and fifth articles of the agreement, as before stated.)

In this, as in all similar cases, almost every thing depends upon the answer that must be given to the question, do the parties, in truth, stand in the relation to each other of borrower and lender?    If they do, and the lender is to be paid more than legal interest, the contract is usurious and void, whatever may be its form or structure.

A mere loan of stock, upon an agreement to replace it at a certain day, or to pay the sum advanced and the dividends upon the stock in the mean time, is not usurious, because the lender may in fact be a loser, should the stock rise in value.    *Tate vs. Wellings*, 3 *Term Rep.* 531.  1 *Eden*, 273.  This, however, can only apply to public stocks, such as that of a bank, or of the government, which are transferable as a species of property of fluctuating value. But a party cannot be permitted, as in this instance, to set apart a certain portion of property, or the value of

property he has sold, and by assimilating it, in his contract to any public stock, to reserve upon its value interest beyond that which is legal, and equal to the dividends upon public stock. *De Butts vs. Bacon, 6 Cranch,* 253. In the first of these articles, a certain portion of the property is valued, and called stock. It is most manifest, however, that the identical same property thus valued, was not to be returned, but its estimated worth of $3,000 only; and by the fifth article, a mortgage was to be given, that no loss may arise in either principal or interest, rents or wages, &c. Now there were rents and wages to be paid for property leased and hired, but there was no other sum than this $3,000 mentioned in this contract, to which the terms *principal* and *interest* could apply ; consequently, as to the property so valued at $3,000, it must be regarded as a sale. Indeed, the plaintiff himself speaks of it as " the purchase of said materials," and, therefore, as to that specified sum, it would be considered as a loan of so much money, the principal of which was thus expressly secured. And then the contract apparently assimilating this valuation to bank stock, stipulates that there should be paid upon it, quarterly, an interest equal to the dividends upon the stock of the *Union Bank of Maryland,* provided it did not sink lower than simple interest, but at all events legal interest, the principal and legal interest were not at hazard in any respect whatever, and the lender was to have the chance of getting more than legal interest, if the specified bank dividends should amount to more than legal interest. It is usurious to stipulate for the chance of obtaining such an addition to the legal interest. *Barnard vs. Young,* 17 *Ves.* 44. This usury relates only to the $3000, which formed only one of the component parts of this contract, but that taint necessarily spreads over and vitiates the whole. *Harrison vs. Hammel,* 5 *Taunt.* 780. And, consequently, the contract of the 1st November, 1806, must be considered in all respects whatever, as utterly null and void.

The act of assembly declares, that all *contracts for money lent,* whereby there shall be reserved above the rate of six per cent. per annum, shall be utterly void. But the contract of 1st July, 1811, has every appearance of fairness upon its face. It is a stipulation for the payment of no more than principal and legal interest, nor is it shown to be in any way connected with any agreement by which more than legal interest is reserved upon that sum of money which is secured by it. There being then nothing apparent upon this mortgage itself, nor any thing else connected with it, which has a prospective view to the payment of more than legal interest, accruing from, and after the date therein specified, it must be considered as entirely valid, unless it is shown to be an assurance for carrying into effect the previous usurious contract, or to be in truth a covenant, whereby the usury agreed to be paid, and which had accrued under the original contract, was secured.

In order to contaminate the second security with the usury of the original contract, it must appear that the second security is a mere colorable shift to evade the act of assembly, devised at the time the money was originally lent, and the first security given; or that the second security is in truth no more than a continuation, renewal, or substitute of the original contract. *Cuthbert vs. Haley,* 8 *Term Rep.* 390. 4 *Esp. Rep.* 11. For a note or mortgage given as a collateral security for a judgment, will not be affected by usury in the contract upon which the judgment was obtained. *Belding vs. Pilkins,* 2 *Cains Rep.* 150. *Thatcher vs. Gammon,* 12 *Massa. Rep.* 278. And so too, where a note was given for a sum justly due, with an agreement that more than legal interest should be paid, and after sundry payments of the usurious interest, and a part of the principal, the old note was cancelled, and a new one given for the balance of the principal, reserving legal interest; the second note was held to be valid. *Chadburn vs. Watts,* 10 *Massa. Rep.* 121. *Stoyel vs. Westcott,* 3 *Day,* 350. But the parties are always allowed to recede from an illegal intention, formed

and expressed, but not executed. As where, after having entered into an usurious contract, they cancelled, and abandoned it altogether; and striking off the usury, entered into a new contract, securing the payment of principal, and legal interest only; such second contract will not be at all affected by the usury of the first. In such case, however, it must appear, that the second was not made to secure the performance of the first contract. *Wright vs. Wheeler*, 1 *Camp.* 165. *Barnes vs. Headley*, 2 *Taunt.* 184. The act of assembly declares, that all contracts, whereby more than six *per cent. per annum*, is reserved, shall be void; consequently, if the contract of the 1st July, 1811, be entirely new, and wholly distinct, from that by which the usury was reserved, it cannot be affected by it, or by any different and passed usurious contract between the same parties.

By the fifth article of the contract of the 1st November, 1806, it is stipulated that *James*, shall give a mortgage of all his property, to secure a compliance with every thing he had undertaken by that contract. The contract of the 1st July, 1811, is a mortgage of certain specified property, peculiarly situated, and a stipulation for the payment of a certain sum of money, with legal interest from a specified day. So far it appears, that these two contracts are essentially different, and wholly unconnected with each other. But the plaintiff in his bill states, that the contract of the 1st of November, 1806, was the original agreement; that an account was taken predicated upon it, by which it was found that *James* was indebted to him in the sum of $4200, and that the mortgage of the 1st July, 1811, was given to secure the payment of the sum of money which had been so found due, which the mortgage itself recites; and by the proofs it is shown, that this mortgage was executed to secure the sum found due by *James*, upon the articles of agreement of 1st November, 1806; and there is nothing in the case which shows, either that the dividends on the specified bank stock did not exceed legal interest, or that in taking the account, the usurious interest was struck off or abandoned.

Hence it appears, that the mortgage was given expressly in fulfilment of the original usurious contract; and so far as regards the payment of the money stipulated to be paid by it, including interest equal to the dividends on the specified bank stock, the mortgage was distinctly considered by the parties themselves, as substituted for, and standing in the place of the contract of the 1st November, 1806, and having been so declared, it has succeeded to the infirmity and became contaminated with the usury of the original contract; and like the original, it is a contract whereby more than legal interest is secured to be paid, and must therefore be deemed utterly null and void.

Having thus come to the conclusion that this mortgage contract, which it is the object of the bill to sustain and enforce, is usurious and void, I deem it wholly unnecessary to notice any of the other matters of defence set forth in the answer of the defendant, *Prudence*, and which were so much relied upon in argument by her counsel.

DECREE, *that the bill be dimissed with costs.*

From this decree the complainant appealed to this court.

The cause came on to be argued before BUCHANAN, Ch. J., EARLE, MARTIN, ARCHER, and DORSEY, J.

*Dulany*, for the appellant.

1. The contract of 1st November, 1806, was not usurious. By returning a stock of rope and yarn of the same quantity, *Chalmers* would have fulfilled his contract. The $3,000 was not the purchase money, nor was it stipulated that the rope, &c. to be returned, should be of that *value*. Such a contract, with the agreement in regard to the dividends, would have been usurious, because then, the principal would not have been at hazard. It is not contended, that the same *identical* rope, &c. was to be returned, but that articles of similar quantity and quality, were to be. When the contract speaks of the articles being worth $3,000, the language is merely descriptive, and does not amount to a stipulation that the stock to be returned at the end of the

stipulated period, shall be worth that sum. The sum of $3,000 was mentioned to avoid any difference, as to the amount to be paid, in case *Chalmers* did not elect to return the rope, &c. as he had a right to do. Upon his refusing to exercise this privilege, then, he was to pay the $3,000, but not otherwise. The *principal*, then, was at hazard ; because, although goods similar in quantity and quality might have been returned by *Chalmers*, still the *value* may have been much reduced by a depreciation in the market price of such goods, and, consequently, there could be no usury, no matter what the rate of compensation for the use may have been. *Ord. on Usury*, 38. In the construction of contracts, courts are always anxious to avoid that interpretation which imputes usury, if it can be done, without departing from the plain meaning of the terms employed.

2. If the contract was usurious, the defence of usury made by the defendant, *Prudence*, is not sufficiently stated in her answer. *First*, because it does not sufficiently aver, that by the contract, more than six per cent. interest might have been received—*Secondly*, because it does not sufficiently state, that the mortgage of 1st July, 1811, was given to secure more than the principal and legal interest ; and, *Thirdly*, because it is not sufficiently stated that the parties intended to reserve usurious interest. The defence of usury must be well pleaded, and a bad plea is equivalent to none. *Ord.* 91, 92. *Faulder vs. Stuart*, 11 *Ves.* 302.

Every fact constituting the usury, must be positively stated in the plea, or averred in the answer, as a ground of defence. In this case, the answer does not allege that the lender would, at all events, or in any event, get more than legal interest. The averment is merely argumentative. Taking more than six per cent. is not usurious, unless there is a *corrupt* agreement to do so, and this must be *positively averred*. *Ord.* 37, 59. 7 *Bac. Abr.* 208, 209, 210.

Here the averment is not that the agreement was corrupt, but that the transaction was usurious, as disclosed by the

facts to which the court is referred, to determine its character. The answer should have shown the *quantum* of interest above the legal rate. 2 *Showers*, 329. 2 *Bac. Abr.* 209. 2 *Chitty's Pl.* 467. If all the facts supposed to constitute the usury, had been set out, the plaintiff would have had notice, and might have shown the absence of a corrupt intent. But suppose the original agreement was usurious, and the defence is sufficiently taken in the answer, it does not follow that the mortgage is so, nor is there any averment to that effect. Between the periods of the first agreement and the mortgage, the usury, if there was usury in the first, may have been abandoned, and therefore it was necessary that the answer should have averred the existence of usury, when the mortgage was executed, and this is not done. The allegation of usury, imperfect as it is, is confined to the first agreement.

3. Independent of the objection of usury, there is no defence of which the defendant can avail herself, there being no evidence, or at least no sufficient evidence, of the parol agreement stated in her answer. But even if the parol agreement was clearly proved, it would not be allowed to vary the terms of the written contract.

*Taney*, (Attorney General, U. S.) and *Mayer*, for the appellee.

1. The agreement of November, 1806, is usurious and void. The articles loaned, and the articles to be returned, are not specified. All the contract says on this subject is, that money to the amount of $3,000 was to be returned, or articles of that value. The stipulation in regard to interest is, that six per cent. is certainly to be paid, and more, if the dividends on the designated stock should amount to more. Neither the principal nor legal interest, therefore, were at hazard, and, consequently, the stipulation for a contingent payment of more than six per cent. was usurious. *Barnard vs. Young*, 17 *Ves.* 44. *De Butts vs. Bacon*, 6 *Cranch.* 252.

The next question is, do the pleadings present such a case as to give the defendant the benefit of the defence of usury ? Now the *bill itself* presents the usurious contract, and seeks to have it enforced, and, therefore, no plea, at all, was necessary. The bill itself is a bar to the relief prayed for. By the act of 1704, *ch.* 69, the contract exhibited with the bill is made usurious ; independent of any corrupt agreement, if more than six per cent. is reserved, the contract is tainted with usury, and void. *Barnard vs. Young,* 17 *Ves.* 44. If, however, the frame of the bill does not preclude the complainant from recovering, the answer sufficiently sets up the defence. It states that usurious interest was intended to be reserved, and that is enough, without alleging the amount of the excess. The same strictness in pleading is not required in equity, as at law. In the former, it is necessary merely to give notice of the ground of defence, and parties are not entangled with technical rules. The defence here is taken by way of answer, but if it was by plea, and the case was at law, it would be too late for the plaintiff to avail himself of this objection, after having taken issue upon the plea. Having taken issue, the question of usury must be tried. 1 *Camp.* 166, (*note.*) If he meant to object to the sufficiency of the manner, in which the defence is presented, he should have demurred. The charge of the usury in the contract, applies to the mortgage. The latter refers to, and recites the former. It is not an independent security, not contemplated by the first contract; but was stipulated for by that contract, and executed in conformity with it. It partakes, therefore, of all its infirmities. *Cuthbert vs. Haley,* 8 *Term. Rep.* 390. *Wright vs. Wheeler,* 1 *Camp.* 166, *note* 3. If a party complainant asks the court to enforce a written contract, he cannot vary it by parol, and have it executed in its varied form. But here, the complainant asks to have the *entire* written contract executed, and refuses to perform a verbal stipulation, which he is in conscience bound to do. The attempt is to perpetrate a legal fraud, and parol evidence to

expose, and repel, such an attempt is admissible. The defence is not put on the ground of mistake, for there was no mistake. It is put on the ground of fraud, in refusing to fulfil a parol agreement, which was the inducement to the written one. The evidence shows, that the complainant has not a fair and equitable claim to the relief he is seeking, and consequently, is admissible, under the act of 1785, *ch.* 72, which requires the plaintiff, before he can have such relief as is asked here, to show a fair and equitable claim. Upon a bill for the specific performance of a contract, in regard to which the court have a discretion, parol evidence will always be let in, to show the want of an equitable claim to the relief sought. *Wesley vs. Thomas, 6 Harr. and Johns.* 24. 3 *Bac. Abr. Title Fraud.* 1 *Powel on Con.* 294, 427, 428. *Jerem. Eq.* 424, 434. *Woollam vs. Hearn,* 7 *Ves. Jr.* 211. *Higginson vs. Clowes,* 15 *Ib.* 516.

*Johnson,* in reply.

If the contract of 1806, and the mortgage, are both usurious, and the bill on its face presents an usurious contract, the defendant should have demurred. By answering, or pleading, the defects in this bill are waived. 1 *Eq. Cas. Abr.* 42. *Jones vs. Earl of Strafford,* 3 *P. Wms.* 80. *Mit. Eq.* 171.

In relation to this defence, therefore, the decree is to depend upon the case made by the answer, and not that made by the bill.

The application to the court was to record the mortgage of 1811, and as its execution is admitted, the *onus* of showing that it should not be recorded upon the ground of unfairness or fraud, in obtaining or failing to record in time, is upon the defendant, as the law does not *presume* fraud.

The bill does not seek to enforce the contract of 1806. Its only object is to enforce the mortgage, which is not alleged to be usurious in the answer, either positively or argumentatively. The charge of usury is levelled at the

contract alone, and the mortgage is impeached only on the ground of fraud. But suppose the usury spoken of in the answer is applicable to the mortgage, the next question is, is the defence sufficiently stated. Although, in a Court of Chancery, mere matters of form cannot be objected, yet defences by plea, must be substantially averred. *Tiernan vs.* *Poor and wife,* 1 *Gill and Johns.* 230. If the same matters which are contained in an answer in Chancery, would be bad in a plea, upon general demurrer at law, they are bad here, and the cases show that a plea at law, containing the facts averred in this answer, would be bad on demurrer. 7 *Bac. Abr.* 209. 2 *Showers,* 329.

It is said, that in an answer in chancery, the term "usury" is sufficient, because that term imports every thing, which constitutes the offence. If this be so, it would be equally good at law, which is not the case. The defendant must state the amount of the usurious interest, and the proof must correspond with the allegation. He cannot allege one rate and prove another. When a statute is pleaded, the party pleading must show himself entitled to its provisions. 1 *Mitf.* 214. The mere general allegation of usury does not give the plaintiff, notice of the character of the usury, which it is intended to rely on, and would, if tolerated, render evidence of any kind admissible, though the rule is, that the very kind alleged, and none other, must be proved. The plea should also aver the *intent* to take usurious interest. *Ord.* 37, 92.

The usury relied on in the answer, relates not only to the $3000, but to the whole contract of November, 1806, though the rope walk, &c. mentioned in that contract, were merely hired to be returned in *specie,* and of course formed no part of the money, consequently, as the answer is not supported by the proof, it must fail. Suppose the dividends, spoken of in the contract, had been stated in the answer to be the dividends of some other stock, the defence must have failed, because of the variance between the alle-

gation and the proof. But although the contract may be usurious, and the answer sufficiently presents the defence, it does not follow that the mortgage is not good. 2 *Saun.* 184.

2. The defendant claims an interest in this property as a mere volunteer. The deed for her benefit, does not appear upon its face, to have been made in pursuance of any *anti-nuptial* contract.

It is said that her answer, as to the consideration upon which this deed is made, is evidence; but such evidence is inadmissible, as being explanatory of a written contract. *Jones vs. Sluby*, 5 *Harr. and Johns.* 372. The deed appears upon its face to be purely voluntary, and another character cannot be given to it by evidence. *Betts vs. Union Bank*, 1 *Harr. and Gill*, 175.

3. The contract of 1806 is not usurious. By the first and fifth articles, *Chalmers* was authorized to return the stock at his pleasure. The fifth shows, that the specific stock was to be returned; and this article also, restrains *Chalmers* from disposing of it, without the consent of *Chambers*, which restriction is incompatible with the idea of a sale. And the object in stating the amount of the stock, was only to secure *Chambers*, if it should be parted with, without his consent. In the case in 17 *Ves.* 44, relied on, on the other side the option of being paid, or receiving the article again, was with the *lender.*

In 4 *Ves.* 678, as in this case, the borrower has the option, either to pay the money, or restore the property, and therefore, no matter what the compensation, there can be no usury. *Ord.* 25.

ARCHER, J., delivered the opinion of the court.

According to the established practice of Chancery in this State, it may be taken to be a general rule, that a defendant, although he answer the bill, and issue be thereon joined, may at the hearing object, that the case made in the bill, does not entitle the party to equitable relief; and if his ob-

jection be sustained, the bill will be dismissed.    *Gover vs. Christie*, 2 *Harr. and Johns.* 67.  *Drury vs. Conner*, 1 *Harr. and Gill*, 220.  *McAttee vs. Johnson*, M. S.    *Peale vs. Gas Light Co. M. S.*

This rule, however, as it regards some defences, at least, given by statute, cannot apply.  Thus, limitations must always be pleaded, both at law and in equity, and in neither tribunal is it good ground to object to the recovery, that the plaintiff's pleadings, on the face of them, show a case barred by limitations; because, although apparently barred, evidence may show that the statute does not bar, for there may have been acknowledgments, which take the claim out of the operation of the statute.    And to permit the objection to be taken at the hearing, when the defence has been put upon other grounds, would at all times enable the defendant to take the plaintiff by surprise, and deprive him of an opportunity of vindicating his rights.

The same doctrine, though not perhaps to the same extent, prevails where reliance is placed by a defendant, upon the usurious character of the contract set out in the bill, as the foundation of the plaintiff's proceeding.    Where a bill for the specific execution of a contract, states a case which may, or may not be usurious, according to the facts which really exist in the case, it is apprehended, that the statute of usury must always be pleaded, or relied upon in the answer, and for the same reason which requires the pleading of the statute of limitations.  For if the defence of usury had been pleaded, those allegations in a bill, from which the inferences of usury are argumentatively drawn, might be shown by evidence to be susceptible of other deductions, rendering transactions to which they refer entirely innocent and legitimate.  If this be so, to permit the defendant to place his defence upon other grounds, and at the hearing insist upon usury, would in many instances, work great injustice.

If indeed a case were stated in a bill clearly usurious, which no inference or intendment could help, it might be governed by different considerations, and would perhaps

fall within the general rule above adverted to, which authorises the dismissal of a bill at the hearing, no matter what may be the defence, where it clearly states no case for equitable interposition.

Does the bill then state a case clearly usurious, one which no inference or intendment can aid? We clearly think it does not. The contract of 1806, in some of its articles between these parties, may be conceded to be usurious, and it does stipulate for the execution of a mortgage, to secure the performance of its provisions, as well those which are usurious, as those which are not; and the bill states, that a liquidation of the claims of the parties was made, and that a mortgage was executed in pursuance thereof. These allegations would *prima facie* present to the court, the mortgage as attainted with the usury of the original contract.

But the contract of 1806 is clearly divisible, containing independent, unconnected stipulations, and if the defendant had rested his defence upon usury, the plaintiff might have shown by evidence, that the debt for which the mortgage was taken, was one originating solely from the rents of the land referred to in the articles, and the hire of the negroes, and for the use of the utensils, for the manufacture of rope, without any reference to those separate and independent clauses in the agreement, upon which a usurious interest has been reserved; that all the accounts for the stock of rope and yarn, in relation to which it is above objected, that the instrument was usurious, had been settled and adjusted long anterior to the mortgage, and that the liquidation of accounts had between the parties upon which the mortgage was founded, was entirely in relation to other property, placed in the hands of *Chalmers*. It is therefore manifest, that by dismissing the bill upon its allegations merely, we should be pronouncing that to be usurious, which the complainant would not be debarred, by any allegation in his bill, from showing by evidence was clearly innocent and

lawful. These views of the bill bring us to the consideration of the answer. Is usury sufficiently averred ?

In this examination, it is unnecessary to inquire, whether the defendant should be held to strict technicality in the presentation of his defence; for whatever be the rule in that respect, we are clearly of opinion, that after issue joined upon an answer alleging usury generally, it could not be objected, that the defence had not been taken with more legal precision. It could not it seems be done even at law. 1 *Camb.* 165, *in notes.* And it would be against all rule, to carry greater strictness into a court of equity, than prevails at law.

It is laid down in *Hood vs. Inman,* 4 *Johns. Ch. C.* 437, that pleadings in Chancery should consist of averments, or allegations of fact, and not of inference and argument.

Adopting this principle as the correct rule, it is very clear, that the answer nowhere avers usury in the mortgage. It does not directly aver it, nor indirectly, by any certain inferences. Every thing which is stated in the answer may be true, and yet it by no means will follow that the mortgage was usurious. It does, it is true, state that it was taken to secure a debt, alleged to be due under the contract of 1806; but we have seen, in our examination of the bill, that although this might have been the case, the debt for which the mortgage was taken, may have entirely grown out of independent clauses in the contract, not repudiated by usury. But even the debt is denied, nor is it admitted that the mortgage debt was one accruing under the anterior contract, and it is even in effect asserted, that all claims under the contract, were overbalanced by countervailing claims. And, independent of all this, the defence to the mortgage is clearly and distinctly put upon the ground of fraud, from certain representations and promises made to the respondent by the mortgagee, which constituted her inducement to enter into the mortgage, and which having as she alleges been fallacious, and remaining unexecuted, to enforce the mortgage, would be to enable the complainant

to perpetrate a fraud on her. The complainant thus notified, that fraud is the defence, must necessarily be surprised, if on the hearing, his case, by strained constructions, and argumentative deductions from the answer, is compelled to vindicate his contract from the imputation of usury.

The averment, that the original contract of 1806 was usurious, by no means helps the averments of the answer. To make it efficacious it should have been followed out with the further statement, that the mortgage was given in pursuance of the contract, to secure the usurious interest, by it stipulated to be paid.

The state of these pleadings require, therefore, that the defence should be placed upon other grounds than usury. These will now be examined, and they will be found to be two-fold.

1st. The alleged stipulation, to endorse on the mortgage, that the sum thereby secured, was only nominal, and that it was intended to secure the sum which, on settlement between *James* and *Daniel Chambers*, should be found to be really due.

2. The alleged agreement of *Daniel Chambers*, with her and her husband, as a consideration for her entering into the mortgage, to secure to the respondent, the payment of five thousand dollars, as an equivalent for the interest, she avers she had in the land mortgaged.

In relation to the first ground assumed, it may be remarked, that it is not only not proved, but is in effect disproved by the testimony of *N. Brice*, who proves the declarations of both *Chambers* and *Chalmers*, that the amount of debt mentioned in the mortgage was due.

The second ground of defence is not supported by *Mrs. Lee*, as from her cross examination it is manifest, that she refers to the declarations of the complainant at a time subsequent to the delivery of the mortgage to him, and it rests therefore solely on the evidence of *Thomas Lee*. It would be unnecessary for us to say, what should be the effect of such evidence, if it comes from an incompetent source, and

we think the witness was incompetent. He was a defendant, and properly joined in the suit as a co-defendant, having united with *Mr.* and *Mrs. Chalmers* in the execution of the mortgage, and was clearly liable for costs. The agreement for his examination, which places it on the basis of one taken under the chancellor's order, can make no difference. In all such cases, the exception may be taken at the hearing. Such orders are always made, saving just exceptions. The reason why one co-defendant is permitted to be examined for another, is stated, by *Lord Eldon, Murray vs. Shadwell, 2 & 3 Ves. & B.* 404, to be this, "that if the plaintiff joins persons in a suit, in which he has cause of suit against one, upon one subject, and against another, as to a different subject, but having no cause against them jointly, unless the court permits this examination, the plaintiff, making both defendants in the same suit, would by that sort of mechanism, deprive one of the defendants of the others evidence." In this case however, these defendants were properly joined, and have an interest in the same subject matter, and must be affected by the same evidence. And although *Thomas Lee* has only the interest of a trustee in the result of the decree, in relation to the subject matter in controversy, yet he is personally responsible for costs if the suit go against the defendants. The second ground of defence, by the rejection of *Thomas Lee's* testimony, is just as unsupported by testimony as the first.

Entertaining these views of the subject before us, that usury is not relied on as a defence; that in the shape the bill assumes it cannot be objected on the hearing, that it exhibits an usurious transaction; and that the defences of fraud, are wholly unsupported by competent testimony, the decree of the chancellor is reversed with costs; and this court will proceed to decree, that the mortgage shall be admitted to record, that the mortgage premises shall be sold, and that the cause shall be remanded to the Court of Chancery for further proceedings.

**DECREE REVERSED.**