Tartar et al. Trustees *vs*. Gibbs et al.

(Decided March 22nd, 1866.)

JOHN TARTAR, JAMES PECK, DAVID P. JONES AND OTHERS, TRUSTEES OF THE AFRICAN M. E. CHURCH OF THE CITY OF BALTIMORE *vs*. HENRY GIBBS, PERRY SHEAF, AND OTHERS.

INCORPORATION OF CHRISTIAN SOCIETIES OR CONGREGATIONS UNDER ACT OF 1802 ch. III.—Where a Christian society or congregation incorporates itself under the Act of 1802, ch. III, the persons elected under the articles of incorporation, constitute a body politic, and as such act as trustees holding the estate in perpetual succession, and to manage the same in the most upright and careful manner, according to the discipline of the Church with which they are connected.

The male members of the Chnrch are invested with no visitorial or controlling power over the minister or trustees, or interest in the property of the corporation, or with any authority except in the case of selling or leasing, or in amending the articles, when the consent of two-thirds is required.

CORPORATIONS, HOW TO BE SUED.—The corporation so formed can only be sued in its corporate name; and a suit against the trustees individually, designating them as trustees of the corporation, omitting part of the corporate name is not a suit against the corporate body, the designation superadded being merely a "*descriptio personæ.*"

Where the legal capacities of persons are different, such capacities must be considered as if they were several persons.

MULTIFARIOUSNESS—PRACTICE IN EQUITY.—A Court of Equity may *sua sponte* dismiss a bill for multifariousness when deemed necessary to the proper administration of justice.

———:———: PLEADINGS IN EQUITY.—The general rule is, that if the infirmity of the plaintiff's case appears upon the face of the bill, the defendant may rely upon it at the hearing, no matter how imperfect or what the character of the answer, and that it is only with respect to some defences given by statute, that a different rule prevails.

PRACTICE AND PLEADINGS IN EQUITY.—An objection to the jurisdiction of the Court, or to the capacity of the plaintiffs, may be presented at any time. It may be made by demurrer, plea, answer, or taken advantage of at the hearing.

DIVINE WORSHIP : CHURCH MUSIC.—Singing is recognized as a part of Divine worship among almost all denominations of Christians. Whether it should or should not be accompanied with instrumental music, must be determined by those who administer the discipline of the Church to which they belong.

INTRUSION : MANDAMUS : INJUNCTION.—If the trustees of a church have intruded upon the office or duties of the minister or stewards of the Church, it is no ground for interposition by injunction at the instance of the male members of the congregation, but the remedy is by mandamus at the relation of the officer disturbed or ousted.

APPEAL from the Circuit Court of Baltimore City.

The facts of this case are fully stated in the opinion of this Court.

The cause was argued before BOWIE, C. J., BARTOL, COCHRAN and WEISEL, J.

*Wm. S. Waters and William Daniel* for the appellants.

First. Independent of the question of parties and all other questions, there are no facts alleged which, if true, could authorize the injunction, or making it perpetual. Relief can only be granted upon allegations, and these allegations cannot be extended by evidence. If they are insufficient, no relief can be granted.

Nothing is alleged, either in the original or amended bill, except that instrumental music had been introduced into the worship of the Church, without the legal assent of those entitled to control the matter, contrary to the provisions of the charter, and that, in what the trustees

are charged with doing, they departed from the provisions of the charter, and that, forasmuch as they had violated the charter, relief was asked. That the facts alleged are a violation of the Act of incorporation, and that there are such provisions in it as are alleged, is denied by the Act of incorporation itself, filed as part of the bill, and entitled to be considered as part of the allegations thereof.

Second. The complainants do not allege any interest in the subject matter of the bill. They describe themselves in the bill as "male members of the African Methodist Episcopal Church of the City of Baltimore," and as such they sue in respect to the breaches of the Act of incorporation. This Act of incorporation purports to have been formed by a more restricted body of men. "The male members of the African Methodist Episcopal Church, above the age of twenty-one years, and residing within the City of Baltimore, and attached to the congregations or churches commonly called, and known by the name of the Sharp Street and Asbury Church." There is no averment in the bill from which it may be inferred that these complainants, or any of them have any interest in the Act of incorporation, or are in any way connected with the subject matter of dispute, even as male members, to be consulted on the exigencies when male members are to be consulted by the terms of the Act of incorporation. For aught that appears they are mere volunteers. *Hill on Trustees*, 519, 458, 459. 2 *Kent*, 304. *Gibbs vs. Cunningham*, 4 *Md. Ch. Dec.*, 322. *Dolan vs. Foy*, 4 *Gill*, 395. *Story Eq. Pl.*, 26, 23, 28. *Balt. U. F. Dep. vs. Creamer*, 17 *Md. Rep.*, 258.

Third. The male members who formed the Act of incorporation, and are on occasion named in it to be consulted, are not a part of the body corporate, or corporation in any sense. The trustees are the body corporate, and the male

members have no control over the duties of the corporation. *African Church vs. Cormac*, 2 *Md. Ch. Dec.*, 143.

Fourth. The complainants do not sue for themselves and all others having a like interest, nor is there anything alleged in the bill from which it may be inferred that any one has an interest in the suit but themselves, and although it is stated that a majority is opposed to the acts of the trustees in the matter of the music, yet it does not appear that they are in favor of the remedy pursued by the complainants, and in their testimony many of them disclaim it. It is necessary that all parties in interest should be parties in some sense. If too numerous, they appear by representation. Here the complainants do not profess to be the representatives of any one but themselves. *Smith vs. Swormstreet*, 16 *How.*, 288. *Story Eq. Pl.*, secs. 72, 107, 108, 109, 110, 113, 131 and 117. *Note* 114. 2 *Mad. Ch. Pr.* 174–177. *Lloyd vs. Loring*, 6 *Ves.* 77, 3 *Note.*

Fifth. It is stated in the opinion of the Court that the bill was agreed to be amended so as to make the complainants sue for themselves and as next friends of the *cestui que trusts* named in the deed of John Sinclair to Jacob Gaillard. Whilst it was conceded that it was competent for the Court to make such amendment, yet it was never agreed in fact that it should be considered as made. This mode of describing the complainants appears alone in the titling of the case in the final decree. But conceding that it was made, it shows that the complainants in express words, so far as the music is concerned, claim to act for themselves and represent no one.

Sixth. The respondents are described as "Trustees of the African Methodist Episcopal Church." Their corporate name is "Trustees of the African Methodist Episcopal Church of the City of Baltimore," and by that name they must sue and be sued. They are, however, sued

as individuals, and the Court is asked to deal with them as individuals, and not as a body corporate. The body corporate alone is responsible for breaches of corporation duty, and are to be compelled to perform corporate duties. *Ang. & Ames on Cor., page 462, secs. 391, 392, 393–777. Smith vs. Howard, 12 Md. Rep., 372. Clayton vs. Carey, 4 Md. Rep., 26. People vs. Steel, 2 Barb., S. C., 417. Colman vs. R. R. Co., 10 Beav., 11. Bagshaw vs. E. N. R. Co., 7 Hare, 130.*

1. It is charged that the trustees have failed in providing a school for the admission of the poor colored children referred to in the deed, thereby rendering the title insecure. This allegation the trustees deny, and allege that they have provided a school, &c. The evidence, if admissible under the issue, does not contradict, but sustains the denial.

2. It is alleged that the rents and profits have not been applied as required by the deed of trust, but have been used and appropriated by the trustees for other purposes not authorized, or contemplated by the grantor. The denial of this allegation is covered by the general denial in the answer. This allegation is too general, and is not sufficiently specific or certain for any relief according to the rules of equity pleading.

3. The decree referring to the auditor is not within the prayer of the bill. The prayer is that the trustees may be called upon to render an account of their receipts and disbursements for the last three years. This is not a prayer for an account. It is answered when the account is rendered, as has been done. The decree for an account is not been limited to three years.

4. The fact that there is a prayer for the removal of the trustees, and that this account is as necessary in going to

determine the action of the Court upon this point, will not aid the decree for an account. The trustees are a body corporate, and the connection with this trust is incidental. If they commit such breaches of trust as will induce the appointment of new trustees of this particular fund, that will not induce the Court to deprive them of their corporate rights under the Act of incorporation, which is a different matter. They are trustees of this trust in their corporate and not in their individual character, and can be sued in reference to it only in the corporate capacity, can be remedied only as a corporate body. And the misconduct could, at most, only involve the removal of them from the particular trust. The prayer is, that the trustee account generally, and that they be removed generally.

5. The appellees are not alleged in the bill to have any interest in the subject matter of the trust at all. They are described in the original bill as members of the African Methodist Episcopal Church in the City of Baltimore, and in the alleged amendment heretofore referred to as next friends of the *cestui que trust*, and in this deed of trust. Granting the amendment regularly, (and this is not granted,) this description is not a sufficient averment of title to authorize them to interfere in this trust, or the Court to decree anything in their favor.

6. There are the same objections to them being considered proper parties as have been considered in reference to the question of music, with this exception, that this is a trust and is a charity which this Court cannot enforce in the manner proposed by the bill of complaint, and the decree at the suit of these appellees.

7. The testimony shows no misapplication of the trust fund. The answer denies it. The account filed with the answer being a paper called for on oath, is evidence of its contents.

The quarterly conference, whose duty it was, according to the discipline of the Church, to examine the accounts of the trustees, examined them and approved them.

In reference to all the subjects, it will be observed, that the bill is multifarious. Three of four distinct subjects are embraced in it, having no connection with each other.*

*Benjamin C. Presstman* for the appellees.

The appellees will seek to maintain, that the allegations of the bill are amply sustained by the proof in the cause, and that the case is one of equity cognizance.

Act of 1802, ch. 111, secs. 2, 3, 4, 5, 6, 7, 12. Act of 1809, ch. 139. *Articles of Incorporation of the African Methodist Episcopal Church. Discipline of the Methodist Episcopal Church, chap.* 3, *sec.* 1, *page* 41, *"Public Worship." "The Spirit and Truth of Singing," sec.* 2, *page* 42. The trustees were clothed with full power to regulate the management and use of property. No change is to be made by them affecting the economy of the Church, nor in the current receipts and disbursement of the funds of the Church. Act of incorporation, section 7. No change to be made in the provisions of these articles, except by a vote of two-thirds of the male members over twenty-one years, at a meeting called for that purpose. For the true meaning of the word economy as used in the articles see said articles.

The question as to the use and employment of a musical instrument in the divine service of the African Methodist Episcopal Church, was submitted, after due notice, by the minister in charge (Rev. Mr. Cronin,) to a meeting of the male members of the Church, called according to the charter of the corporation, at which he presided, and was, as is proved by the minutes, duly attested, decided by the

---

*Note by Reporter.*—A large portion of the argument of the appellants being on points not passed upon by the Court, has been omitted.

majority of the said meeting that the musical instrument should not be so used and employed.   And the appellees have the right to invoke the aid of the Court, as possessing alone the power to carry into effect that decision.   *Daniels Ch. Pl.   Story's Eq. Pleading.*

Trustees have no right to alter the terms of the trust. *Dolan & Foy vs. the Mayor and City Council of Baltimore,* 4 *Gill,* 395.   All male members over the age of twenty-one years are *cestui que trusts.*   2 *Story's Equity, Jurisprudence. Title Trusts, secs.* 960, 961, 963.   *Lingan vs. Henderson,* 1 *Bland,* 326.   2 *Greenleaf,* 248.   *Campbell vs. Poultney,* 6 *G. & J.   Tiernan vs. Poor,* 1 *G. & J.,* 216.   The proper parties have been made to the bill.   *Act* 1802, *ch.* 111, *sec.* 1.   *Daniel's Ch. P., page* 25, *sec.* 5.   *Story's Eq. Pleadings,* 50.   5 *H. & J.,* 122.

The answer of defendants admits that they hold in trust the property conveyed by Sinclair to Gaillard.   *McCormick vs. Gibson,* 3 *G. & J.,* 12.   *McCubbin vs. Cromwell,* 7 *G. & J.,* 157.   No exception can be taken to the bill for multifariousness.

"Where a party without filing a demurrer, goes into an examination of witnesses as to the merits of the whole matter in controversy, he waives all exception to the defect."   2 *G. & J.* 14.   *Gibb vs. Claggett,* 10 *G. & J.* 480.   No appeal can be taken from the order to account. *Claggett's Adm'r. vs Crawford,* 12 *G. & J.,* 275.

The doctrine of non-accountability to the Court of Equity for the management of the trust as claimed by appellants, is wholly inadmissible, and not sustained either upon principle or precedent.   *Dent vs. Maddox,* 4 *Md. Rep.,* 522. *McNeal & Worley vs. Glenn,* 4 *Md. Rep.,* 87.

There is no power in the Methodist Episcopal Church to give effectual relief against trustees for the violations of

trust complained of. *See Discipline of the Methodist Episcopal Church, ch.* 111, *sec.* 2.

BOWIE, C. J., delivered the opinion of this Court.

The appellees "as male members of the African Methodist Episcopal Church of the City of Baltimore, and as next friends of the poor colored children named as *cestui que trusts,* in the deed of John Sinclair to Jacob Gaillard and others, and for all others interested," sue the appellants, Henry Gibbs and others, trustees of the African Methodist Episcopal Church, requiring them to answer on oath, the several matters charged, to render an account of their receipts and disbursements for the last three years, to produce their record book, and praying that the said trustees be removed.

They charge, that by the Act of incorporation, it is made the duty of the trustees of said corporation not to interfere in any wise with the economy of the Church, in the current receipts and disbursements, but it is on the contrary determined and expressly declared that said trustees shall make no additions, alterations or amendments, except by the concurrence of two-thirds of the male members of the age of twenty-one years, etc.

That, in violation of the aforesaid provision, the trustees introduced into the Church building situate in Sharp street, in the City of Baltimore, a part of the property of the corporation of which they are trustees, instrumental music, against the economy of the Church, *and its customary and usual form of worship,* and incurred expenses in consequence thereof, not warranted by the Act of incorporation.

The bill further charged, that the said trustees, in defiance of the provisions of the Articles of incorporation, after having failed to obtain the two-third vote as required,

continued to allow said instrumental music to be made a part of the worship in said Church, against the wishes and expressed opposition of a large majority of the male members of the said Church, and they have also continued to incur the additional expenses of an organist, wholly unauthorized by said articles and against the letter and spirit of the same.

The appellees further charged, that the appellants by virtue of their appointment, held in trust certain property conveyed by John Sinclair to Jacob Gaillard and others, in trust, that the rents, issues and profits should be applied towards the education of poor colored children, that they had wholly failed to comply with the express provisions of the deed of trust; that they had failed to comply with the provisions of the sixth section of the Act of 1812, January 8th, and its supplement under which the African Episcopal Church was incorporated, which requires the trustees shall keep a record book, and cause to be registered a fair account of all their proceedings, subject at all times to the inspection of the several members of the Church, etc.

They further charged that in all respects the affairs and pecuniary matters of the said Church had been carelessly, negligently and faithlessly conducted for many years, and they were kept in ignorance of the manner and way the large receipts of the burial ground belonging to the Church are expended, and also, of the receipts of other property belonging to the aforesaid corporation, the said trustees refusing to disclose to the members of the Church the true condition of its monetary affairs, etc.

Subsequently, a petition and supplemental bill were filed, making the elder in charge a co-defendant, alleging he had permitted the employment of the organ although

requested to forbid it, and praying an injunction against the trustee and elder prohibiting them from using or allowing to be used a musical instrument or organ in the public worship of the congregation until the further order of the Court, and praying a subpœna and answers by the defendants to the original and supplemental bill.

An injunction was issued on the 27th of May, 1864, prohibiting the use of instrumental music, with leave to move for a dissolution upon filing their answers, by defendants.

The answers, denying all the allegations of the bill, and particularly that instrumental music is contrary to the custom of the Methodist Episcopal Church or to the law or provisions of the Act of incorporation, and all of the breaches of trust charged by the complainants against the respondents. On the 3rd of June a commission to take testimony was issued by consent of counsel, under which very voluminous evidence was taken. On the same day the respondent's counsel entered a motion to dissolve the injunction.

On the 19th of September the complainants prayed leave to amend their bill, by asking an injunction restraining the trustees from applying the proceeds of the property to any other purpose than that set forth in the deed, to wit: the education of the poor children, etc., and for such other relief, which petition was set down for hearing at the final hearing, by order passed 16th of July, 1864.

On motion of the complainants, on the 21st of September, 1864, the case was set down for final hearing on the 7th of October, 1864, and on the 22nd of September, 1864, the counsel made the following agreement: " *Gibbs et al. vs. Henry Tartar et al.* We agree that this case shall be heard on final hearing this day, and also upon the motion to dissolve the injunction."

On the same day the appellants filed exceptions to the original and supplemental bills, and also to the testimony.

On the 26th of September, the appellees prayed leave to amend their bill, for the purpose of adding a more definite and full designation of their interest as parties to this suit, by adding after their names and present description the words " and as next friends of the poor colored children named as *cestui que trusts* in the deed of John Sinclair to Jacob Gaillard, etc.," which was granted by order of same date.

The appellants, on the same day, filed exceptions to the jurisdiction of the Court, to remove them as trustees, as prayed in said bills, and also to the averment of the bills, in substance, as follows :

1st. Because as a corporate body, they could not be deprived of their corporate rights in the proceedings instituted against them in this cause.

2nd. They hold none of the powers and trusts set forth in said bills, except as a corporate body, and are not liable to answer for any violation of the same in their individual capacity, in which character they are sued.

3rd. They are sued in respect of three several and distinct subject matters in the same suit.

4th. The complainants have not shown in either of the bills, they have any interest in the suit; all who are in like interest with the complainants are not made parties.

5th. There is no real grievance or cause of complaint, set out with such certainty, that the defendants can answer or the Court determine.

In the view which we entertain of the law of this case, it will not be necessary to examine the voluminous testimony taken and returned under the commission issued in the cause, but to inquire whether the subject matter of the suit is such as the Court can take cognizance of; and if jurisdiction exists, whether the parties complainant and defendant, are such as authorize the relief prayed.

The main object of the bill was, (as observed by the

Judge below,) the removal of the trustees; the various charges were so many causes alleged, to justify the application for their removal. The injunctions were merely ancillary; if the main object was beyond the jurisdiction of the Court, in the manner presented, the accessories must follow the principal.

The Act of 1802, ch. 111, entitled " An Act to incorporate certain persons in every Christian Church or congregation in this State," does not as in some other States incorporate the congregation or society, but provides " that in every Christian Church or congregation, etc., there shall be and remain sufficient power and authority, in all male persons, above twenty-one years of age, belonging to any such Church, etc., to elect at their discretion, certain sober and discreet persons, not less than five, nor more than thirteen, which persons so elected shall be and are thereby constituted a body politic or corporate; upon being registered as thereinafter directed, to act as trustees in the name and behalf of the particular Church for which they are chosen, and to manage the estate, interest and property of the same in the most upright manner, and shall have perpetual succession, and shall by their name of incorporation have power to sue and be sued."

The Act of incorporation of the appellants formed under this general Act, as explicitly enacts that the powers and authorities given to the trustees shall not be construed to prevent the ministers appointed agreeably to the discipline of the said Church from the use and enjoyment of the Church as heretofore ; nor interfere with the economy of the Church ; but the current receipts and disbursements shall be under the control and management of those persons who may from time to time be regularly authorized. *Vide* secs. 6 *and* 7.

The persons elected, under the Act of incorporation,

constitute a body politic, and as such act as trustees holding the estate in perpetual succession, and to manage the same in the most upright and careful manner, according to the discipline of the Methodist Episcopal Church of the United States.

The male members of the Church are invested with no visitorial or controlling power over the minister or trustees, or interest in the property of the corporation ; or with any authority, except in the case of selling, or leasing, or amending the articles, when the consent of two-thirds is required.

The right of the ministers in charge, to the use and enjoyment of the Church, (which includes all the uses to which it can be applied for religious purposes,) is expressly reserved to them ; and the economy and management of the fiscal affairs, the receipts and disbursements, are as explicitly assigned to those appointed for that purpose, under the discipline of the Church.

Assuming the trust, under the deed of Sinclair, to be vested in the trustees of the African Methodist Episcopal Church of the City of Baltimore, as a body politic and corporate, that corporation has not been made a party to the cause, as it can only be sued in its corporate name.

The defendants, the appellants are sued individually, the designation " trustees of the African Methodist Episcopal Church" superadded being a " *descriptio personæ.*" This is not a mere misnomer, but suing them in a different capacity.

In a similar case the late learned Chancellor BLAND held this language :

" This bill has, however, not only omitted to bring before the Court those whom it appears from its statements have an interest in the claims and pretensions set forth, and also that body who is charged to be the cause of all the alleged

injury, but it has brought before the Court certain persons who in the capacities in which they stand have not the least interest in the matters in controversy ; for where the legal capacities of parties are different, such capacities must be considered as if they were several persons." *Binney's Case*, 2 *Bland*, 108. Which position he sustains by numerous authorities. The appellant's exceptions went not only to the capacity of the complainants to sue, and the liability of the defendants to be sued, but the multifariousness of the bill, the want of jurisdiction over the subject matter, etc.

It is true, as intimated by the Judge below, the usual manner of taking advantage of multifariousness is by demurrer, plea or answer ; and it has been held that the defendants have waived all exceptions to that defect by filing their answers and going into an examination of testimony as to the merits. *Gibbs vs. Clagett*, 2 *G. & J.*, 28. But a Court of Equity may " *sua sponte*" dismiss a bill for multifariousness when deemed necessary to the proper administration of justice. *Ohio vs. Ellis*, 10 *Ohio*, 456. *Story's Eq. Pl.*, 284. 3 *How., U. S.*, 333, 412.

The other objections raised by the exceptions to the jurisdiction of the Court, the right of the complainants to sue, the irregularity of proceeding against members of a corporation individually, instead of suing the body politic, in their corporate name, do not seem to have been particularly noticed.

The general rule (as shown by *Chambers vs. Chalmers et al.*, 4 *G. & J.*, 420,) is, that if the infirmity of the plaintiff's case appears upon the face of the bill, the defendant may rely upon it at the hearing, no matter how imperfect or what the character of the answer, and that it is only with respect to some defences given by statute that a

22     v. 24.

Tartar et al. Trustees *vs.* Gibbs et al.

different rule prevails. *Gibbs vs. Cunningham,* 4 *Md. Ch. Dec.,* 326.

The bill should show the rights of the plaintiff, the manner in which he is injured, and that the case as stated, and the relief asked are properly within the jurisdiction of a Court of Equity. 1 *Mitford's Eq. Pl.,* 37. *Cooper's Eq. Pl.,* 5. *Story's Eq. Pl.,* 23.

An objection to the jurisdiction of the Court or to the capacity of the plaintiff, may be presented at any time, it may be made by demurrer, plea, answer, or taken advantage of at the hearing. 3 *Bland,* 143.

The General Assembly of this State, in its earliest legislation, exhibited the utmost solicitude to avoid all interference with the ecclesiastical affairs of the several denominations of Christians. The Act incorporating certain persons in every Christian Church or congregation enacts, " Nothing therein contained shall be construed, adjudged or taken to abridge or affect the rights of conscience or private judgment, or in the least to alter or change the religious constitution or government of any Church, congregation or society, so far as respects or in anywise concerns doctrine, discipline or worship." *Act of* 1802, *ch.* 116, *sec.* 13.

Singing is recognized as a part of Divine worship, among almost all denominations of Christians. Whether it should, or should not be accompanied with instrumental music, must be determined by those who administer the discipline of the Church to which they belong. With this, :s we have seen, the trustees are expressly prohibited from interfering by the terms of their incorporation. If they have intruded upon the office or duty of the minister or steward of the Church, it is no ground for interposition by injunction at the instance of the male members of the congregation, but the remedy is by *mandamus,* at the

relation of the officer disturbed or ousted. *Vide Act of* 1828, *ch.* 78. *Clayton et al. vs. Carey et al.*, 4 *Md. Rep.*, 30. *Angel & Ames on Corp.*, 704.

If the minister, as charged by the amended bill, has violated the doctrine or discipline of his denomination of Christians, he is responsible to its ecclesiastical tribunals.

Finding some of the allegations of the bill involve questions of " doctrine, discipline or worship," with which this Court has no power to interfere or decide, and the complainants no right to bring before this Court ; and other allegations make charges of breach of trust, against a corporation or body politic, which are not properly before this Court, (without deciding whether the complainants have any right to maintain such a suit against the Corporation,) we think the orders granting and continuing the injunctions heretofore issued in this cause should be reversed, the injunction dissolved and the bill dismissed with costs to the appellant.

> *Orders reversed, injunction dissolved*
> *and bill dismissed.*

